IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

JAMMIE L. MARSHALL,

      Plaintiff,

v.

G.D.C.I. FOOD SERVICE, et al.,

      Defendants.

CIVIL ACTION NO.: 6:17-cv-117

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion to Reconsider, doc. 28, and Defendant Tatum's Motion for Judgment on the Pleadings, doc. 32, construed as a Motion to Dismiss. For the following reasons, I **RECOMMEND** the Court **DENY as moot** Plaintiff's Motion to Reconsider. I **RECOMMEND** the Court **GRANT** Defendant's Motion to Dismiss and **DISMISS without prejudice** Plaintiff's Complaint for failure to exhaust his administrative remedies.[1] Finally, I **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff *in forma pauperis* status on appeal.

---

[1] The remaining Defendants, Hall and White, have not yet been served and have filed no response to Plaintiff's Complaint. Doc. 22. Because I find Plaintiff failed to exhaust his administrative remedies, his entire Complaint should be dismissed, even though these Defendants have not yet answered.

## BACKGROUND

Plaintiff's claims arise out of a serious injury he obtained while working at the canning facility at Rogers State Prison ("RSP").[2]  Doc. 16 at 2.  Plaintiff's duties at the canning facility involved retrieving greens from a blancher and placing them on a conveyor belt.  Id.  While working on December 22, 2015, his left hand was caught under the safety guard and pulled in between the chain and gear of the conveyor belt.  Id.  The machine crushed Plaintiff's hand, which no longer functions at "full capacity."  Id. at 2–3, 10.  Plaintiff experienced excruciating pain, and his hand still causes him pain.  Id. at 14.

Before his injury, Plaintiff told two transport officers—Officers Hall and White—the safety guard was not attached properly and would injure someone if not repaired.  Id. at 2–3; Doc. 34-1 at 1.  Plaintiff also reported the problem to "the proper supervisor," "supervisor Peterson," "maintenance personnel," and Defendant Clay Tatum, but the safety guard was never fixed.  Doc. 16 at 3.

Defendant Tatum moves to dismiss Plaintiff's claims because, in part, Plaintiff failed to exhaust his administrative remedies.  Doc. 32-1.  In his Response to Defendant's Motion to Dismiss, doc. 34, Plaintiff says he requested a grievance form on December 23, 2015, the day after his injury.  Doc. 34-1 at 2.  Plaintiff says he was told, "[T]hey didn't have any and would have to call main control to get some forms."  Id.  At some point in December 2015, after Christmas, Plaintiff says he received a grievance form and filed it with a new female counselor in "G" building who did not give him a receipt.  Id.  In early January 2016, Plaintiff claims he asked why he did not receive a receipt and was told he would have to speak with Tammy

---

[2]  Plaintiff's Amended Complaint, doc. 16, supersedes and replaces his original Complaint, doc. 1, and is the operative pleading in this case.  Lowery v. Ala. Power Co., 483 F.3d 1271, 1277 (11th Cir. 2007).

2

Stankowitz, the grievance coordinator at RSP, but she was on vacation. Id.; Doc. 32-2 at 2. Plaintiff claims he asked Stankowitz about his grievance later in January 2016, and she told him "it was in process." Doc. 34-1 at 2. After realizing his original grievance about his injured hand might have been lost or destroyed, Plaintiff filed Grievance Number 213877 on February 23, 2016.[3] Doc. 32-2 at 41.

In his February 23, 2016 grievance, Plaintiff wrote, "On 12-22-15 around 09:00 and 09:30 while on detail at the canning plant, my left hand got injured." Doc. 32-2 at 41. At the bottom of the grievance form, Plaintiff checked "No" in response to the question, "Is this grievance being filed within the 10 day time limit?", and wrote as his explanation, "I was seeking for an [sic] personal injury attorney." Id. Defendant Tatum, the warden at RSP, denied Plaintiff's grievance because it was "filed out of time frames as outlined in policy." Id. at 42. On March 7, 2016, Plaintiff filed an appeal for Grievance Number 213877. Id. at 46. Plaintiff's grievance appeal form is cut off on the left side, so the basis of his appeal is not completely clear; however, some of the legible portions read: "I was seeking counsel for my injury," "My answer was 'no,' as explained, . . . because my injury is on going [sic]," "surgery due to my finger," and "weeks of physical therapy." Id. There is no apparent mention of the alleged December 23, 2015 original grievance within Plaintiff's February 23, 2016 grievance or his March 7, 2016 appeal of the same. Id. at 41, 46. Plaintiff's appeal was denied on April 7, 2017. Id. at 45.

Plaintiff filed his original Complaint in this case on August 7, 2017. Doc. 1. In accordance with the Court's April 26, 2018 Order, Plaintiff filed an Amended Complaint on May

---

[3] Plaintiff filed at least 24 grievances from 2015 to 2018 while he was imprisoned. Doc. 32-2 at 36–37. Before the December 22, 2015 incident, Plaintiff had already filed 11 grievances. Id. Between the December 22, 2015 incident and Plaintiff's filing of Grievance Number 213877 on February 23, 2016, records show Plaintiff filed one other grievance, Grievance Number 213879, in which Plaintiff complained about drainage in the plumbing system. Id. at 36–37, 48. Of the grievances reflected in the records before the Court, only Grievance Number 213877 is relevant to this case.

25, 2018, doc. 16.  After conducting the required frivolity review of Plaintiff's Amended Complaint, the Court dismissed Plaintiff's claims against the Georgia Department of Corrections, Supervisor Peterson, and Dr. Lewis but allowed deliberate indifference claims against Defendants Hall, White, and Tatum in their individual capacities to proceed.[4]  Docs. 19, 20, 24.  Plaintiff filed the instant Motion to Reconsider, arguing the Court committed plain error by dismissing Plaintiff's claims against Supervisor Peterson and failing to address the status of any claims against unnamed individuals identified as the "Maintenance Crew."[5]  Doc. 28 at 1–2.  Defendant Tatum responded in opposition to the Motion to Reconsider.  Doc. 31.

Of the remaining Defendants, only Tatum filed the instant Motion for Judgment on the Pleadings, which the Court construes as a Motion to Dismiss, on October 29, 2019.  Doc. 32.  In his Motion, Defendant Tatum argues for dismissal for three reasons: failure to state a claim, failure to exhaust administrative remedies, and qualified immunity.  Id. at 1.  Defendant provides a declaration from Tammy Stankowitz, the grievance coordinator at RSP, as an exhibit.  Doc. 32-2. Attached to Ms. Stankowitz's declaration are four supporting exhibits: (1) the Georgia Department of Corrections' ("GDC") Statewide Grievance Procedure, id. at 8; (2) a copy of Plaintiff's grievance history, id. at 36; (3) a copy of Grievance Number 213877 with related documents, id. at 40; and (4) a copy of Grievance Number 213879 with related documents, id. at 48.  Plaintiff responded to the Motion to Dismiss, doc. 34, and Defendant Tatum filed a Reply, doc. 36.

---

[4]  I recommended dismissal of Plaintiff's claims against the Georgia Department of Corrections, Supervisor Peterson, and Dr. Lewis be dismissed.  Doc. 19.  Plaintiff did not object to the recommendation.  The Honorable R. Stan Baker adopted the recommendation and dismissed Plaintiff's claims against the Georgia Department of Corrections, Supervisor Peterson, and Dr. Lewis.  Doc. 24.

[5]  Plaintiff does not seek reconsideration of the dismissal of his claims against the Georgia Department of Corrections or Dr. Lewis.  Doc. 28.

**DISCUSSION**

**I.     Defendant Tatum's Motion to Dismiss**[6]

Defendant Tatum moves to dismiss Plaintiff's Complaint due to Plaintiff's failure to exhaust his available administrative remedies. In the Eleventh Circuit, exhaustion of administrative remedies is a matter in abatement that generally does not address the merits of the case. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); see also Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (The first step of Turner "is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).") Thus, the exhaustion defense "is not ordinarily the proper subject for a summary judgment" but instead "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75. Because the defendant must raise exhaustion in a motion to dismiss, the Eleventh Circuit treats failure to exhaust as an unenumerated defense pursuant to Federal Rule of Civil Procedure 12(b). Id. at 1375 (holding "exhaustion should be decided on a Rule 12(b) motion to dismiss" even though "motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b)"). For this reason, I construe Defendant's Motion for Judgment on the Pleadings as a Rule 12(b) motion to dismiss for failure to exhaust administrative remedies.

**A.     Proper Exhaustion Under § 1997(a)**

*1.     PLRA's Exhaustion Requirement.*

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974

---

[6] Because Plaintiff's claims are due to be dismissed for failure to exhaust administrative remedies, I decline to address the other arguments in Defendant's Motion.

(11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding that the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting that an inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement).  Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit."  Smith v. Terry, 491 F. App'x 81, 83 (11th Cir.

6

2012) (emphasis retained) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit." (emphasis retained) (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

The procedural steps prisoners must follow to fully exhaust are set out by their prison's administrative grievance policies. Jones, 549 U.S. at 218; Bracero v. Sec'y, Fla. Dep't of Corr., No. 17-14278, 2018 WL 3861351, at *1 (11th Cir. Aug. 14, 2018) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures established by the prison."). Proper exhaustion requires prisoners do more than simply initiate a grievance; they must correctly follow all procedural rules set out in the institution's policy—including time limits—and must appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process.

7

Johnson, 418 F.3d at 1159 ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim."); Sewell, 2007 WL 201269 (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### 2. *The GDC's Administrative Grievance Policies.*

The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") IIBO5-0001. Whatley I, 802 F.3d at 1208. SOP IIB05-0001 contains the policy for general grievances, including grievances for deliberate indifference to safety and medical needs. See Whatley v. Smith (Whatley II), 898 F.3d 1072, 1074 (11th Cir. 2018) ("To exhaust administrative remedies under the Georgia Department of Corrections Standard Operating Procedures ("SOP"), inmates must follow the . . . prison grievance process outlined in SOP IIB05-0001."). Under SOP IIB05-0001, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" which "affects the offender personally" and which is not explicitly listed in the SOP as a "non-grievable issue." Doc. 32-2 at 13.

Under SOP IIB05-0001, inmates must file grievances within 10 calendar days of becoming aware of the facts from which the grievance arises. Whatley II, 898 F.3d at 1075; Shaw v. Toole, No. 6:14-CV-48, 2015 WL 4529817, at *5 (S.D. Ga. July 27, 2015). The grievance is screened by a Grievance Counselor, who determines whether to accept the grievance for processing or reject it. Shaw, 2015 WL 4529817, at *5. Inmates may "hand deliver" a completed grievance form to any counselor, who will provide the offender with a receipt. Doc. 32-2 at 15. If the grievance is accepted for processing, the warden has 40 days to review the grievance and determine whether to grant or deny it. Shaw, 2015 WL 4529817, at *5. If a grievance goes unanswered, the inmate may appeal the non-response after the warden's time to

answer expires.  Id. ("An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired."); see also Whatley I, 802 F.3d at 1208 ("If the warden does not respond within forty days . . . the prisoner may appeal[.]").  The inmate has seven calendar days from the date he receives the warden's response to his grievance to file a Central Office Appeal.  Doc. 32-2 at 20; Toole, 2015 WL 4529817, at *5.  To appeal, the incarcerated individual "must fill out and sign the Central Office Appeal Form . . . and give it to his/her Counselor."  Doc. 32-2 at 20; McIlwain v. Burnside, No. 5:17-cv-363, 2019 WL 984289, at *3 (M.D. Ga. Jan. 30, 2019) ("In order to successfully file an appeal, an inmate must fill out a Central Office Appeal Form, sign it, and give it to the appropriate counselor.").  The grievance counselor then provides the inmate a receipt, which is found at the bottom part of the appeal form.  Doc. 43-3 at 14.  The Commissioner then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender.  Id. at 15; Toole, 2015 WL 4529817, at *5.  The grievance process is not complete until the inmate receives the Central Office's response to his appeal. Wright v. Fish, No. 3:19-cv-003, 2019 WL 2721222, at *6 (S.D. Ga. May 14, 2019).

### 3. *Standard of Review for Exhaustion.*

Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint.  Jones, 549 U.S. at 216; Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.  "In response to a prisoner lawsuit, defendants may file a motion to dismiss and raise as a defense the prisoner's failure to exhaust administrative remedies."  Pearson, 665 F. App'x at 867. Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative

9

remedies, the court may consider evidence outside the pleadings." White v. Berger, 709 F. App'x 532, 541 n.4 (11th Cir. 2017) (citing Bryant, 530 F.3d at 1376); Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017); Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record." (citing Bryant, 530 F.3d at 1376)).

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1080–82. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero, 2018 WL 3861351, at *1. This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn, 706 F. App'x at 563–64 (citing Turner, 541 F.3d at 1082); Pavao v. Sims, 679 F. App'x 819, 824 (11th Cir. 2017). "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) (quoting Whatley I, 802 F.3d at 1209)); Turner, 541 F.3d at 1082.

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have

shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209).

### B. Applying the Turner Test

Defendant Tatum ("Defendant") argues the Court must dismiss Plaintiff's Amended Complaint because Plaintiff failed to exhaust all administrative remedies before filing, as required under the PLRA. Doc. 32-1 at 3. In his Amended Complaint, Plaintiff writes:

> On December 22, 2015, plaintiff filed a complaint in which plaintiff alleged that: (i) plaintiff's left hand was seriously injured while operating improperly-maintained equipment at the canning plant while plaintiff was on work detail at R.S.P. on December 22, 2015; and it was a Dr. Sharon Lewis, who is D.O.C.'s medical director, which she did take [sic] an unreasonable amount of time to review plaintiff's medical grievance which made plaintiff file the instant § 1983 civil complaint because of the timing that was approaching which would have not allowed for plaintiff to file his § 1983 complaint.

Doc. 16 at 2. Defendant points out an ambiguity here. Doc. 32-1 at 5–6. The phrase "On December 22, 2015, plaintiff filed a complaint" could be construed to mean Plaintiff filed a grievance on the day of his injury. Plaintiff also could have been referring to his original Complaint, which he filed on August 6, 2017, and which discusses the December 22, 2015 incident. Doc. 1. In his original Complaint, Plaintiff does not specify whether he filed a grievance within the 10-day time limit. Id. However, Plaintiff does allege in his Response to Defendant's Motion that he filed a grievance at some point after Christmas in December, which would have necessarily been within the 10-day time limit, but that this original grievance was lost or destroyed. Doc. 34-1 at 2–3. Given the liberal pleading standard afforded pro se litigants, the Court finds Plaintiff's allegations enough to satisfy step one of Turner.[7] Defendant agrees and instead focuses his argument on step two of Turner. Doc. 32-1 at 5–6.

---

[7] Plaintiff was proceeding pro se at the time he filed his Amended Complaint. Plaintiff obtained counsel at a later date, doc. 27, and, as of the date of this Recommendation, Plaintiff continues to be represented by counsel.

11

At step two of Turner, the Court must make specific findings to resolve disputed factual issues related to exhaustion. Here, the Court reviews Plaintiff's efforts to grieve Defendants' conduct related to the December 22, 2015 incident. Plaintiff's grievance history only reflects one grievance relating to the December 22, 2015 incident: Grievance Number 213877, which Plaintiff filed on February 23, 2016. Doc. 32-2 at 36, 41. But the 10-day time limit permitted by SOP IIB05-0001 expired on January 1, 2016, which places Grievance Number 213877 well outside of the permissible time to file. Doc. 32-2 at 16. As discussed, Plaintiff claims he filed a grievance before this one—sometime between December 26 and December 31, 2015—for which he did not receive a receipt, and which was subsequently lost or destroyed. Doc. 34-1 at 2–3. The first time Plaintiff mentions two separate grievances (one lost or destroyed and the other submitted late) is in his Response to Defendant's Motion to Dismiss.

The record discredits Plaintiff's assertion that he filed two separate grievances relating to his injury. In his original Complaint, Plaintiff writes: "I filed my grievance/complaint with the appropriate grievance committee," and "My grievance was denied, [and] I've since then appealed this denial." Doc. 1 at 3. Nowhere in the original Complaint does Plaintiff's discussion on the use of the prison grievance procedure does he claim that one of his grievances was lost or destroyed. Id. at 3–4, 8. Plaintiff makes no other reference to this purported original grievance in his Amended Complaint—except, arguably, the ambiguous statement that "[o]n December 22, 2015, plaintiff filed a complaint." Doc. 16 at 2. And the remainder of the paragraph containing that statement strongly suggests that by "complaint," Plaintiff means his original § 1983 Complaint—not a grievance.[8] Indeed, all other references to "complaint" in that

---

[8]   For instance, Plaintiff says in this "complaint" that "it was a Dr. Sharon Lewis . . . [who took] an unreasonable amount of time to review plaintiff's medical grievance." Doc. 1 at 2. Plaintiff would not have referred to an unreasonably prolonged review of the relevant grievance in the original grievance

12

paragraph clearly refer to Plaintiff's original § 1983 Complaint.  Id.  Plaintiff uses the word "grievance" when referring to the grievance that would satisfy his exhaustion requirements.  Id.  Further, Plaintiff's explanation for why he filed Grievance Number 213877 outside of the 10-day time limit does not refer to the original grievance being lost or destroyed but provides an entirely different reason: he was seeking a personal injury attorney.  Doc. 32-2 at 41.  In the cut-off copy of Plaintiff's appeal for Grievance Number 213877, no reference to an original grievance can be found.  Instead, the words "seeking counsel," "my injury is on going [sic]," and "weeks of physical therapy" appear.  Id. at 46.  What is more, Plaintiff filed numerous other grievances in 2015.  By late December 2015, Plaintiff had already filed 11 grievances.  Id. at 36–37.  None of those grievances appear to have been lost or destroyed.  Plaintiff does not claim that his grievance records are inaccurate, aside from the purported missing grievance.  Plaintiff admits the counselors normally "cut or tear off the bottom [of the grievance form] for a receipt," yet Plaintiff does not present the receipt to his original grievance in his Response.  Doc. 34-1 at 2.  Finally, Stankowitz, the grievance coordinator at RSP, makes no mention of Plaintiff's alleged January 2016 interaction with her during which Plaintiff claims Stankowitz said his original grievance "was in process."  Doc. 32-2 at 2; Doc. 34-1 at 2.

After weighing the evidence, the Court is convinced Plaintiff failed to timely file a grievance in December 2015 relating to his December 22, 2015 injury.  Plaintiff never mentioned this original grievance until his Response to Defendant's Motion to Dismiss.  Additionally, Plaintiff stated that he filed Grievance Number 213877 outside of the 10-day time limit because he was seeking counsel.  Plaintiff also had an extensive history of filing grievances before his

---

itself.  Moreover, Plaintiff would not refer to his grievance as a "complaint" if he refers to it as a "medical grievance" later.  Id.

injury, demonstrating Plaintiff was very familiar with the grievance process and how to ensure timely grievances should be filed.

Importantly; there is no documentation in the prison's records regarding Plaintiff's purported original grievance. "[A]s a theoretical matter, [a] lack of documentation in the record system is consistent with [a plaintiff's] claim that the defendants deliberately lost or destroyed his . . . grievance," but "a district court does not clearly err when it makes a choice between 'two permissible views of the evidence.'" Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018) (quoting Anderson v. City of Bessemer, 470 U.S. 564, 574 (1985)); see id. ("The district court also appropriately considered [plaintiff's] history of filing grievances as evidence that the defendants did not make administrative remedies unavailable to him or lose or destroy his grievances."); Acree v. Hutchenson, Civil Action No. 6:17-cv-107, 2019 WL 3887545 (S.D. Ga. Aug. 16, 2019) ("Plaintiff . . . presents no evidence aside from his conclusory assertion that prison officials failed to file his grievance . . . . Given these facts, the Court does not find Plaintiff's claim that he filed a grievance . . . credible."), *adopted by* 2019 WL 4437860 (S.D. Ga. Sept. 16, 2019).

Cases where courts have found allegations of lost grievances to be credible generally involve documentation that supports the plaintiffs' allegations. See, e.g., White v. Staten, 672 F. App'x 919, 924 (11th Cir. 2016) (finding plaintiff's lost grievance claim to be plausible where it was "supported by the letters he sent to various prison officials in the weeks and months following the incident in which he repeatedly and emphatically stated that he hand-delivered a grievance to [a counselor] . . . but that [the counselor] never gave him a grievance receipt."); Conner v. Allen, Civil Action No. 6:17-cv-10, 2020 WL 2104943 (S.D. Ga. May 1, 2020) (finding plaintiff submitted an appeal despite the prison's lack of record of the appeal where

plaintiff "offered documentary evidence demonstrating that he did, in fact, submit the appeal"). Here, Plaintiff has no documentation of his attempt to file a grievance in December 2015. Indeed, Defendants submit Plaintiff's grievance history, which shows Plaintiff filed 24 grievances over three years' time (2015–18), and no grievance between October 21, 2015 and February 9, 2016.  Doc. 32-2 at 36–37.  Plaintiff's extensive history of successfully filing grievances "belies any contention that prison officials thwarted his attempts to file grievances or otherwise made the grievance process unavailable to him."  Shaw v. Upton, No. 6:16-cv-6, 2017 WL 2313007, at *8 (S.D. Ga. Feb. 13, 2017).  The evidence before the Court demonstrates Defendant's assertions regarding Plaintiff's lack of exhaustion are more credible than Plaintiff's own self-serving, unsworn, and unsupported statements made only in response to Defendant's Motion to Dismiss.  Thus, the Court finds Plaintiff failed to exhaust his administrative remedies under step two of the Turner analysis.

For these reasons, I **RECOMMEND** the Court **DISMISS** without prejudice Plaintiff's Complaint.  Because Plaintiff's claims are due to be dismissed for failure to exhaust administrative remedies, I decline to address the other arguments in Defendant's Motion.  I also **RECOMMEND** the Court **DENY as moot** Plaintiff's Motion to Reconsider, doc. 28.  Plaintiff's Motion is moot because, even if other Defendants were added back to the case, the claims against them would still fail as a result of Plaintiff's failure to exhaust his administrative remedies.  For this same reason the pending claims against Defendants Hall and White, who have not been served and have not responded, fail.  Therefore, Plaintiff's entire Complaint should be dismissed.

## II.     Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009). Based on the above analysis of Plaintiff's claims, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the above reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motion, doc. 32, and **DISMISS without prejudice** Plaintiff's Complaint for failure to exhaust his administrative remedies. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to

**CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff *in forma pauperis* status on appeal.  Finally, I **RECOMMEND** the Court **DENY as moot** Plaintiff's Motion for Reconsideration.  Doc. 28.

The Court instructs any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 26th day of August, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA